UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**HEATHER ANN NADIA BOWMAN,**

 **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　　　　　　　　**Case No: 5:17-cv-580-Oc-18PRL**

**COMMISSIONER OF SOCIAL**
**SECURITY**

 **Defendant.**

### REPORT & RECOMMENDATION[1]

 Plaintiff appeals the administrative decision denying her application for Disability Insurance Benefits (DIB). (Tr. 21–32). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is due to be affirmed.

**I.** **BACKGROUND**

 Plaintiff filed an application for DIB benefits, alleging disability beginning July 10, 2011. (Tr. 325). The claim was denied initially and upon reconsideration. (Tr. 142–46, 152–57). At Plaintiff's request an initial hearing was held where both the Plaintiff and an impartial vocational expert (VE) testified. (Tr. 61–87). The Administrative Law Judge (ALJ) issued a notice of unfavorable decision, finding Plaintiff not disabled. But that initial decision was reversed and remanded by the Appeals Counsel with instructions to reconsider several aspects of the decision. (Tr. 135–41).

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

The ALJ held a second hearing at which a VE again testified. (Tr. 40–60). The ALJ issued a second decision again finding Plaintiff not disabled. (Tr. 21–32). This time, Plaintiff's request for review was denied by the Appeals Council, (Tr. 5–7), and Plaintiff initiated this action. (Doc. 1). Plaintiff has exhausted his administrative remedies, and the final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: affective disorder and anxiety disorder. (Tr. 24). The ALJ found that the Plaintiff had the residual functional capacity to perform "a reduced range of medium work as defined in 20 CFR 404.1567(c). She would require work which is simple and unskilled (work which can be learned within 30 days)." (Tr. 25).

The ALJ further found that Plaintiff has "non-exertional mental limitations which affect her ability to concentrate upon complex and detailed tasks, but she would nonetheless remain capable of understanding, remember, and carrying out simple job instructions, making work related judgment and decision, responding appropriate to supervision, coworkers and situations, and dealing with changes in a routine work setting. [Plaintiff] should avoid stressful situations such as frequently working with co-workers in a team; frequently working directly with the public; working with co-workers where frequent interpersonal interaction or discussion is required; making few decisions; and using little judgment." (Tr. 26).

Based upon his RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as custodian, laundry worker, and kitchen helper. (Tr. 31–32). Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.   STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

**III.   DISCUSSION**

As an initial matter, Plaintiff argues, in a letter to the Court filed after the her memorandum, that remand is appropriate in this case in light of the U.S. Supreme Court's recent decision in *Lucia v. SEC*, 138 S.Ct. 2044 (2018), holding that ALJs employed by the SEC were "Officers of the United States" required to be appointed by the either the "President, a court of law, or a head of department." 138 S.Ct. at 2051.

The Commissioner points out, however, that unlike in *Lucia*, Plaintiff did not present the appointment clause issue to the agency at any point nor was the issue properly presented to this Court in Plaintiff's memorandum. *Cf.* 138 S.Ct. at 2050 (noting that the petitioner had made a "timely challenge" to the ALJ by pressing the argument before the SEC, the Court of Appeals, and the Supreme Court). The Commissioner argues, therefore, that the issue was forfeited.

It appears that all of the courts that have addressed the appointments clause issue post *Lucia* have agreed that the issue is subject to forfeiture. *See, e.g.*, *Shipman v. Berryhill*, Case No. 1:17-cv-309, 2019 WL 281313, at *3 (W.D. N.C. Jan. 22, 2019); *see also GGNSC Springfield LLC v. NLRB*, 721 F.3d 403, 406 (6th Cir. 2013) ("Errors regarding the appointments of officers under Article II are 'nonjurisdictional.'"). Plaintiff has not provided any authority for not treating the issue as forfeited given that Plaintiff concedes the issue was not raised before the agency.[2] Moreover, the issue was not properly raised here as it was flagged for the first time in a letter to the Court that did not comply with the Local Rules. *See* Local Rule 3.01(f) (prohibiting the filing of requests for relief in the form of a letter).

---

[2] Plaintiff's reliance on *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000), which held that an issue presented to the ALJ need not be presented to the Appeals Council as well to preserve it for review, is unavailing as that case specifically stated that it was not addressing "[w]hether a claimant must exhaust issues before the ALJ." Plaintiff has provided no authority for considering an issue never raised before the ALJ or Appeals Council for the first time in the district court. And the ample authority cited by the Commissioner is to the contrary. *See* (Doc. 22, p. 7 n.3).

Plaintiff raises three additional arguments on appeal: (1) the ALJ erred in evaluating the medical opinions evidence; (2) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and (3) the hypothetical question posed to the VE did not account for all of Plaintiff's limitations.

### A.   The ALJ did not err in evaluating the medical opinion evidence.

Plaintiff argues that the ALJ erred in evaluating the medical opinions of advanced registered nurse practitioner Elizabeth MacDermott, signed by Dr. Sofia Qadir, as well as the opinions of Dr. Joseph Deluca and Dr. Donald A. Stewart, psychologists who examined Plaintiff one time.

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). In determining the weight to be given a medical opinion, the regulations establish a set of factors to consider. 20 C.F.R. § 404.1527(c). Those factors are (1) whether the source examined the claimant; (2) whether the source treated the claimant over a time period; (3) how well the source's opinion is supported by evidence; (4) the consistency between the opinion and the record as a whole; (5) the specialization of the source; and (6) any other factor brought to the ALJ's attention. *Id.* The ultimate determination of whether the claimant is disabled is reserved for the Commissioner. *Id.* § 404.1527(d)(1).

*1. The opinion of Advanced Nurse-Practitioner MacDermott signed by Dr. Qadir*

In determining Plaintiff's RFC, the ALJ gave "little weight" to the opinion of ARNP MacDermott, who completed a questionnaire where she opined that Plaintiff had "marked" limitations in understanding and memory, sustaining concentration and persistence, social interactions, and adaptations. (Tr. 538–45). The ALJ explained that a nurse practitioner is not an

"acceptable medical source" whose opinion must be given controlling weight. *See* SSR 06-03p, 71 Fed. Reg. 45593 (Aug. 9, 2006).[3] In addition, while noting that Ms. MacDermott had a treating relationship with Plaintiff, the ALJ also noted that her opinion was only partially consistent with her treating notes. (Tr. 29).

Plaintiff first argues that ALJ erred because the opinion was co-signed by Dr. Qadir, a psychologist and acceptable source. She maintains that the ALJ should have considered this fact in evaluating the opinion and treated the opinion with the deference due the opinion of a treating physician.

Although Plaintiff is correct that the opinion was co-signed by Dr. Qadir, there is no evidence that Dr. Qadir had a treating relationship with Plaintiff. While Dr. Qadir co-signed Ms. MacDermott's notes on two occasions, it appears Plaintiff was only seen by Dr. Qadir on one occasion on July 14, 2015, which was more than two years after the medical opinion relied on by Plaintiff was generated. (Tr. 582). Moreover, the two instances where Dr. Qadir co-signed treatment notes by Ms. MacDermott were likewise well after the medical opinion at issue was generated. (Tr. 547–48). And the mere fact that an acceptable medical source co-signed a medical opinion is not sufficient to entitle the opinion to the deference of a treating physician's opinion. *See Arsenault v. Acting Comm'r of Soc. Sec.*, Case No. 3:16-cv-9, 2017 WL 1161310, at *4 (M.D. Fla. March 29, 2017) (declining to give controlling weight to medical source statement co-signed by non-treating physician).

Next, Plaintiff argues that the ALJ failed to adequately explain his decision to give Ms. MacDermott's opinion "little weight." In addition to the fact that Ms. MacDermott was not an "acceptable medical source," the ALJ pointed out that Ms. MacDermott's "treatment notes [were]

---

[3] This guidance has since been rescinded but was in effect at the time of the ALJ's decision. *See Rescission of Soc. Sec. Rulings*, 82 Fed. Reg. 15263 (March 27, 2017).

only partially consistent with [the] level limitation [in Ms. MacDermott's opinion]." (Tr. 29). Plaintiff argues this assertion was not supported by an adequate explanation to allow for meaningful review. *See Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985) (explaining that meaningful review requires that the ALJ "state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered").

The ALJ's discussion of Ms. MacDermott's opinion makes clear, however, that the ALJ considered the fact that Ms. MacDermott "is a health care professional who has had the opportunity to care for [Plaintiff] and her opinion is given some weight." (Tr. 29). But that the "marked limitations in understanding and memory, concertation and persistence, social interactions, and adaption" were not entirely supported by Ms. MacDermott's treatment notes. (Tr. 29). *See Crawford Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (affirming decision to discount physician's testimony based in part on inconsistencies between the opinion and the doctor's treatment notes). The ALJ's order discusses those treatment notes in some detail and shows that the ALJ considered the treatment notes in deciding what weight to give Ms. MacDermott's opinion. (Tr. 27, 29). It is not this Court's role to re-weigh that evidence or second guess the ALJ. *See Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence.").

Finally, Plaintiff argues the ALJ erred in giving greater weight to the opinions of the non-examining state agency medical consultants, Dr. Jennifer Meyer and Dr. Judith LaMarche. (Doc. 14, pp. 22–23). The state agency consultants opined that Plaintiff "had mild limitations in activities of daily living, and moderate limitations in social functioning and concentration, persistence, and pace." (Tr. 30). Plaintiff points out that both state agency consultants based their opinions on only

those records available at the time. (Tr. 93, 105–06). Yet significant additional records were created after their evaluations.

It is not error to give greater weight to non-treating sources where the opinion of a treating source has been properly discounted. *See Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). Although the state agency consultants did not have access to the entire record, the ALJ did and concluded that the opinions of the statement agency doctors were consistent with the evidence. (Tr. 30). Plaintiff has not shown the ALJ erred in making this finding. *See Crow v. Comm'r Soc. Sec.*, 571 F. App'x 802, 807 (11th Cir. 2014) (affirming decision to give greater weight to non-treating sources because it was "consistent with the record").

In sum, the ALJ's order shows that he considered Ms. MacDermott's opinion but determined it was entitled to little weight because she has not an acceptable medical source and her treatment notes, which the ALJ summarized, were inconsistent with the substantial limitations Ms. MacDermott opined on. Plaintiff has not shown this was error.

### 2. *The opinions of one-time examiners Dr. DeLuca and Dr. Stewart*

Next, Plaintiff argues that the ALJ erred in giving "little weight" to the opinions of Dr. DeLuca and Dr. Stewart, both psychologists who evaluated Plaintiff one time. (Tr. 571–75, 601–04). Dr. DeLuca opined that Plaintiff had marked limitations in understanding and memory, concentration and persistence, social interactions, and adaptation. (Tr. 569). Dr. Stewart likewise opined that Plaintiff had marked limitations in a variety of areas of concentration and persistence, social interactions, and adaptation. (Tr. 598).

The ALJ gave Dr. DeLuca's opinion little weight because he was a one-time examiner, his opinion was "inconsistent with the doctor's own mental status examination of [Plaintiff] and instead seems to rely heavily on [Plaintiff's] reported symptoms." (Tr. 29). Similarly, the ALJ

gave little weight to the opinion of Dr. Stewart because he was a one-time examiner and his opinion was inconsistent with his own examination and the record as a whole. (Tr. 30). The ALJ also noted that: "Beyond mostly check marks placed on a form, the opinion is not well supported by any adequate explanations or objective clinical signs." (Tr. 30).

Opinions of one-time examiners are not entitled to any particular deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ specified the weight due to each opinion and explained his reasoning. (Tr. 29–30). Plaintiff takes issues with the ALJ's decision, arguing that the opinions of the two doctors were in fact consistent with their examinations and the record as a whole. Yet, it is not the role of this Court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Phillips*, 357 F.3d at 1240 n.8.

Dr. Deluca's notes show that Plaintiff "did not look ill at ease," and "her manner was poised, and there were no signs of undue restlessness or inattention." (Tr. 574). And her "impulse control and social judgment appeared to be within normal limits." (*Id.*). The ALJ found these notes were inconsistent with the limitations in Dr. Deluca's opinion. As to Dr. Stewart's opinion, the ALJ found that the limitations suggested by Dr. Stewart were "not bolstered by the doctor's own examination of [Plaintiff] and the record as a whole for the period in question" and consisted mainly of check marks unsupported by objective findings. (Tr. 30). *See Hammersley v. Astrue*, No. 5:08-cv-245, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) (noting courts have found that check-box forms "have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions").

The ALJ's decision shows that the ALJ considered the medical opinions, the results of the examinations, and the record evidence as a whole. The ALJ then determined that the opinions of the two doctors were inconsistent with that evidence and based primarily on subjective evidence.

*See Crawford*, at 363 F.3d 1159 (affirming decision to discredit medical opinion based, in part, on the fact that it was based mainly on subjective symptoms). Plaintiff has not shown this conclusion was error. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir 2005) (noting that merely pointing to other evidence that "would undermine the ALJ's RFC determination" is insufficient to establish error).

### B. The ALJ properly evaluated Plaintiff's subjective symptoms.

Plaintiff argues in her second issue that the ALJ erred in evaluating her subjective symptoms. The ALJ found, after summarizing the record evidence, that Plaintiff's "allegations are not bolstered by the treatment record." (Tr. 29). The ALJ did not make a finding that Plaintiff's subjective symptoms were wholly consistent or inconsistent with the record. Instead, he remarked that the "mental limitations in the residual functional capacity address the claimant's allegations to the extent they are supported by the claimant's conservative and limited treatment." (Tr. 30).

A claimant can establish disability through the claimant's own testimony as to the severity of her subjective complaints, including complaints of pain. *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013). The ALJ must consider subjective complaints if the ALJ finds evidence of an underlying medical condition and either (1) objective medical evidence "confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or [2] evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms." *Id.* (citing *Foote*, 67 F.3d at 1560).

If the record shows that the claimant has an underlying medical condition that could cause the claimant's subjective complaints, the ALJ must then "evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Id.* The ALJ should

consider "all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors." *Id.* The ALJ may also consider the other factors established in 20 C.F.R. § 404.1529(c)(3). *Id.* at 832. If the ALJ decides not to credit the claimant's subjective complaints, the ALJ must either articulate adequate reasons for doing so or the record must be obvious as to this finding. *Id.*

Plaintiff argues that the ALJ failed to provide "explicit and adequate" reasons for disregarding her subjective testimony. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). But, as the Commissioner points out, the order does not wholly disregard Plaintiff's subjective symptoms—it merely credited them only to the extent they were "supported by [Plaintiff's] conservative and limited treatment." (Tr. 30). The ALJ's order summarizes the record evidence in detail, discussing Plaintiff's testimony at the hearing as well as the medical evidence and opinion evidence. (Tr. 26–30.

Plaintiff primarily takes issue with the ALJ's finding that her treatment had been "conservative," noting that she was treated with psychotropic medications and therapy—the main treatment for mental health conditions. *See Freese v. Colvin*, No. 8:15-cv-1315, 2016 WL 4487916, at *8 (M.D. Fla. Aug. 5, 2016) (noting that aside from hospitalization, medication management and psychotherapy are the main treatment modalities for mental illness). The Commissioner argues that even if Plaintiff is correct that the ALJ erred in characterizing Plaintiff's treatment as "conservative," the error was harmless because the other factors identified by the ALJ, the lapses in Plaintiff's treatment and lack of objective indications of impairment, support the ALJ's decision.

Assuming that the ALJ's characterization of Plaintiff's treatment as "conservative" was error, the other evidence relied on by the ALJ in making his credibility determination is sufficient

to support his finding. *See Wilson v. Comm'r of Soc. Sec.*, 500 F. App'x 857, 859–60 (11th Cir 2012) (finding ALJ's erroneous statement was harmless where "the record shows that there [was] sufficient evidence to support an adverse credibility determination"). The record shows significant gaps in Plaintiff's treatment, often of several months. (Tr. 519, 523, 548, 553). In addition, the state agency consultants, whose opinions the ALJ determined were entitled to great weight, were consistent with the ALJ's findings and supported not fully crediting Plaintiff's subjective symptoms. (Tr. 95–97, 107–10). And Plaintiff has not shown that the ALJ erred in determining that "most of the information contained on the medical record represents [Plaintiff's] own complaints regarding her condition." (Tr. 29).

Although Plaintiff argues that the ALJ's reasons for discounting her subjective symptoms were inadequate, the ALJ's decision summarizes the record evidence, showing that the ALJ considered that evidence, and explains the factors that led the ALJ to discount Plaintiff's subjective findings. (Tr. 29). "The question is not . . . whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011). Plaintiff has not met her burden to establish error on this issue. *See Foote*, 67 F.3d at 1562 (explaining that the ALJ's credibility finding need to enough to enable the court "to conclude that [the ALJ] considered [the claimant's] medical condition as a whole").

### C. The ALJ did not err in posing a hypothetical question to the VE.

An ALJ may rely on the VE's testimony provided that the hypothetical questions posed to the VE "comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). While the hypothetical question must include all of the claimant's limitations, an ALJ

is not required to include findings in the hypothetical that are not supported by the record. *Crawford*, 363 F.3d at 1161.

Plaintiff argues that the ALJ's hypothetical is not substantial evidence because the ALJ's assessment of Plaintiff's RFC did not account adequately for all of Plaintiff's limitations. *See Grimes v. Comm'r of Soc. Sec.*, No. 6:11-cv-568, 2012 WL 3244541, at *12 (M.D. Fla. June 18, 2012) ("Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence."). Specifically, she argues that the ALJ failed to account for the limitations he found under the psychiatric review technique in his hypothetical. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (explaining that the "special technique" for evaluating mental impairments requires separate findings as to the "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation").

The ALJ found that Plaintiff had mild limitations in activities of daily living; moderate difficulties in social functioning and with regard to concentration, persistence, or pace; and no episodes of decompensation. (Tr. 25). In the hypothetical posed to the VE, the ALJ asked the VE to "assume an individual claimant's age, education, and past work experience. Assume the individual would require work which is simple and unskilled . . . And assume further the individual has non-exertional limitations which frequently affect her ability to concentrate upon complex or detailed tasks but the individual would remain capable of understanding, remembering, and carrying out simple job instructions, could make work related judgments and decisions, could respond appropriately to supervision, coworkers, and work situations, could deal with changes in a routine work setting." (Tr. 55–56).

The VE responded that there were jobs such an individual could perform. The ALJ then posed a second hypothetical that the "individual should avoid stressful situations. Examples for our purposes would be frequently working with co-workers in a team; frequently working directly with the public. There may be some indirect but no frequent direct contact with the public. The individual should not work in an environment where she has frequent interpersonal interaction that's required with co-workers. . . . The individual should work in a situation where she makes few decisions and uses little judgment." (Tr. 56). The VE responded that such an individual could also perform jobs that exist is significant numbers in the national economy. (Tr. 57).

First, the ALJ's limitation to "simple and unskilled" work would seem to be sufficient to account for Plaintiff's moderate limitations in concentration, persistence, and pace. *See Lee v. Comm'r Soc. Sec.*, 551 F. App'x 539, 541 (11th Cir. 2014) (finding ALJ "implicitly accounted for [claimant's] limitations in concentration, persistence, and pace when he imposed a limitation of simple work"). In addition, the ALJ limited Plaintiff tasks involving "simple job instructions" (Tr. 55–56). Likewise, the ALJ limited Plaintiff's capacity to interact with supervisors, co-workers, and the public, accounting for her moderate difficulties in social functioning. *See Scott v. Comm'r Soc. Sec.*, 495 F. App'x 27, 29 (11th Cir. 2012) (affirming where ALJ accounted for mental impairments by limiting claimant to unskilled work). Accordingly, Plaintiff has not met her burden to establish error on this point as well.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **affirmed** under sentence four of 42 U.S.C. § 405(g).

**DONE and ORDERED** in Ocala, Florida on February 11, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties